ERNEST R. LILLEY, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lilley v. Commissioner
Docket No. 47118-86
United States Tax Court
T.C. Memo 1989-602; 1989 Tax Ct. Memo LEXIS 593; 58 T.C.M. (CCH) 623; T.C.M. (RIA) 89602; November 1, 1989
Ian M. Comisky, Edward I. Foster, and David M. Kuchinos, for the petitioner. Carol-Lynn E. Moran, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in, and additions to, petitioner's Federal income tax as follows: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
[1] 6651(a)(1) 6653(a)
6653(a)(1)
6653(a)(2)
1974
$ 837.00  $ 200.00  $ 42.00 --
--
1975
2,518.00  630.00    126.00  --
--
1976
2,508.00  627.00    125.00  --
--
1977
3,991.00  982.00    200.00  --
--
1978
5,140.00  1,285.00  257.00  --
--
1979
6,260.00  1,565.00  313.00  --
--
1980
4,171.00  1,043.00  209.00  --
--
1981
9,172.00  2,293.00  --
$ 459.00 * 1982
11,413.00 2,853.00  --
571.00   **
1983
11,120.00 2,780.00  --
556.00   ***
1984
983.00    246.00    --
49.00    ****
*595 After concessions, we must decide: (1) whether petitioner's conviction for violating section 7203 in each year 1976 through 1979 collaterally estops him from denying that the additions to tax determined for willful failure to file and for negligence for those years apply, (2) whether petitioner's purported mental illness was reasonable cause for his failure to file Federal income tax returns for 1974, 1975, and 1980 through 1984 for purposes of section 6651(a)(1), and section 6653(a), (3) whether petitioner's reliance on the advice of competent counsel not to file tax returns for the years 1980 through 1984 relieves him from liability for additions to tax under sections 6651(a)(1) and 6653(a), and (4) whether petitioner is entitled to a dependency exemption in 1980 and 1981 pursuant to sections 151 and 152. FINDINGS OF FACT Some of the facts in this case have been stipulated and are so found. Petitioner, Ernest *596 R. Lilley, Jr., resided in Glen Riddle, Pennsylvania, at the time he filed his petition in this case. Petitioner is a graduate of Yale University and received advanced degrees in psychology from Columbia University and in New Testament theology from Union Theological Seminary. In 1970, petitioner invested his life's savings in Mintmaster, Inc. ("Mintmaster"), a Subchapter S corporation in which he was the sole shareholder. Mintmaster minted and sold gold, silver, and bronze medallions and jewelry. Petitioner had prior work experience in the minting industry as President of American Mint Associates and as Assistant to the President and Director of Advertising at the Franklin Mint. In January 1971, pursuant to a Federal search warrant, the United States Secret Service seized all of Mintmaster's assets, acting on the belief that Mintmaster's inventory violated Federal counterfeiting laws and gold regulations. In July 1971, after determining that Federal law had not been violated, the Secret Service returned petitioner's business assets. Petitioner's business deteriorated after the seizure, and Mintmaster went out of business in 1973. After the seizure of Mintmaster's assets and *597 the business' demise, petitioner believed he was entitled to compensation from the Government for the destruction of his business, despite receiving legal advice that a civil suit against the Government was barred by Federal law. Petitioner felt he was unable to file tax returns honestly reporting his income until he met with Federal officials to settle the amount of his claim against the Government. In February 1974, petitioner wrote a letter to then Senator Hugh Scott seeking help in obtaining a settlement conference with the Government, stating that he believed he had broken income tax filing laws. The Treasury Department responded to the letter by stating that compensation was unavailable for petitioner's claim for damages and petitioner should contact the District Director to discuss his income tax problems. Petitioner knew he had an obligation to file returns but failed to do so even though his attorney at the time repeatedly urged him to file. In 1974, petitioner began work as a night watchman for Piquet Security Systems, Inc. ("Piquet"). Subsequently, petitioner was promoted to Director of Security at the Springfield Mall where he was responsible for supervising approximately *598 15 employees. In 1977, petitioner began working in-house as Director of Security for the Springfield Associates, the partnership that owned the mall. In 1978, petitioner also became Public Relations and Marketing Manager at the mall. In addition to his job with Springfield Associates, in December 1978, petitioner organized Abacus Programs, Inc., which he operated to display tourist information in shopping malls until 1980. In May 1974, petitioner filed a Form W-4 with Piquet claiming three exemptions from Federal income tax withholding. A few weeks later, petitioner picked up a Form W-4E, Exemption from Withholding, at the Chester office of the Internal Revenue Service and filed it with Piquet to prevent Federal income tax withholding from his salary. On the Form W-4E, petitioner certified under penalties of perjury that he did not anticipate incurring liability for Federal income tax for 1974. When petitioner began work for Springfield Associates in 1977, he filed a Form W-4 indicating married with one exemption, but again went to the local Internal Revenue Service office to obtain a Form W-4E. Upon discovering that the Service no longer made the form, just three days later *599 petitioner filed another Form W-4 claiming he was exempt from withholding by writing the word "exempt" on the Form W-4. In 1979, petitioner again claimed he was exempt from Federal withholding on a Form W-4 filed with Springfield Associates. As a result of filing these Forms W-4, petitioner did not have any Federal tax withheld from his income from 1974 through 1984, with the exception of nominal amounts in 1974, 1977, and 1984. [2] Petitioner, however, permitted his employers to withhold both Commonwealth of Pennsylvania income tax and Federal Insurance Contribution Act (FICA) tax from his wages. When filing his Forms W-4, petitioner explained to his employers that he did not owe Federal income tax since deductions for the damages from the Federal Government's intervention in his minting business exceeded his income. From 1974 through 1984, petitioner worked his way up from the bottom in the security business. During this time, his salary ranged from a low of $ 6,394 in 1974 to a high of $ 38,075 in 1983. Petitioner *600 was a respected employee, although on occasion he was disorganized and behind in his work. He did not have an attendance problem at work and did not exhibit any mental problems that affected his work. His only employment setbacks occurred in 1983, the year of his criminal trial, when he was relieved of some of his responsibilities, and in 1984, when his income dropped because he was in prison for part of the year. Petitioner cooperated with the revenue officers who conducted a civil audit of Mintmaster, and with the special agents who conducted the criminal investigation of his failure to file individual returns. Petitioner explained to the revenue agents in 1974 and again to the special agents in 1981 that he was upset at the Government for putting him out of business and he was unable to file honest returns until he resolved the issue of compensation for the seizure of his business assets with the Government. Petitioner asked the agents to help straighten out his personal tax situation. As a result of the criminal investigation, petitioner was charged with willful failure to file Federal income tax returns for 1976 through 1979 pursuant to section 7203. After a two-day trial *601 in June 1983, a jury convicted petitioner on the charges. Petitioner's conviction was affirmed by the Third Circuit Court of Appeals. Petitioner served a one-year prison sentence as a result of his conviction. After being released from prison in 1984, petitioner was required to file his delinquent 1974 through 1984 Federal income tax returns as a condition of probation. Thomas F. Martin, a competent tax attorney with prior work experience as Chief of the Criminal Investigations Division of the Internal Revenue Service in Philadelphia, represented petitioner from January 1981 to 1985. In 1981, Mr. Martin advised petitioner that it was against his best interest to file his 1980 through 1984 Federal income tax returns while the criminal tax investigation was still in progress. Mr. Martin also suggested that petitioner present a defense of mental illness at his criminal trial in 1983, but petitioner rejected the defense. When helping petitioner prepare his 1974 through 1984 tax returns, Mr. Martin advised petitioner that deductions for "antitrust violations" would be disallowed. Petitioner delayed filing the delinquent returns until faced with violation of his probation in 1985. *602 Petitioner finally filed the delinquent returns on September 9, 1985. On his returns, he took deductions as compensation for claims against the Government, labelling them "deductions for antitrust violations," despite Mr. Martin's advice that the deductions would be disallowed. At the trial of this case, petitioner conceded that the deductions and attributable carryover losses were improper. In anticipation of trial of this matter, on July 25 and 26, 1988, petitioner's current counsel referred him to Dr. Perry A. Berman, a psychiatrist, and Dr. Gerald Cooke, a psychologist. Starting in January 1988, Dr. Berman met with the petitioner biweekly prior to trial. As part of his treatment, Dr. Berman prescribed medication for petitioner. Dr. Cooke administered a battery of personality tests to petitioner to determine long-term personality traits during a single visit on July 6, 1988. Both doctors opined that petitioner suffers from a mental illness that originated with the seizure of Mintmaster's assets in 1971. Although the doctors' technical medical diagnoses of petitioner's mental illness differ, [3] both agree that petitioner suffered from a mental illness that paralyzed him *603 in Federal income tax matters, caused him to believe that he was being persecuted by the Federal Government, and thereby rendered him unable to act as a reasonable person, with willful neglect, negligently or with intentional disregard of the rules and regulations in connection with the filing of his Federal income tax returns for 1974 through 1984. Both doctors agree that petitioner's mental illness only affects his ability to file his Federal income tax returns. In their opinions, someone with petitioner's type of mental illness could function normally in daily activities, yet have a delusional disorder with regard to one aspect of his life -- the requirement to file Federal income tax returns. Both doctors believed that petitioner was not faking his illness, although petitioner is professionally familiar with the field of psychology and in the past had administered personality tests. Neither doctor, however, could definitively state that petitioner was not in remission from his illness at any time during 1974 through 1984. Indeed, a spontaneous *604 remission is possible with petitioner's type of mental illness. Petitioner's wife moved out of the family home with their daughter in August 1980, a year before their divorce in October 1981. Petitioner provided all of the support for his daughter in 1980, an amount exceeding $ 1,200, and in 1981 he provided more than half of her support also in excess of $ 1,200. By court order, petitioner began paying $ 100 a month in child support in December 1981. OPINION Procedural Issue
Before addressing the substantive issues in this case, we must decide a preliminary procedural issue. After the parties filed their briefs, respondent moved for leave to file an amendment to his answer to the amended petition to raise the affirmative defense of collateral estoppel to the sections 6651(a)(1) and 6653(a) additions to tax for the taxable years 1976 through 1979. Petitioner insists that the defense is untimely because respondent failed to plead it prior to trial as required by Rule 39. [4]Jefferson v. Commissioner, 50 T.C. 963, 966 (1968). Respondent pled *605 collateral estoppel in respect of the section 6651(a)(1) addition in his original answer, and at trial respondent's counsel raised the issue of collateral estoppel in respect of both sections 6651(a)(1) and 6653(a) during her opening statement. The Court permitted petitioner after trial to amend his pro se petition to conform pleadings to proof. In his answer to the amended petition, respondent neglected to raise the affirmative defense of collateral estoppel. Despite respondent's shortcomings in pleading, we grant the motion because petitioner had prepared and presented his case as if respondent had timely raised the collateral estoppel defense. In these circumstances we cannot find any resulting prejudice to petitioner. In the interest of justice, Rule 41(a) tempers Rule 39 by permitting liberal amendment of pleadings to add an affirmative defense, even by way of an opening statement. Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing, 663 F.2d 419, 426 (3d Cir. 1981) (interpreting Rule 15(a) of the Federal Rules of Civil Procedure to which we look for guidance in interpreting Rule 41(a)); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). *606 See Cutcliffe v. Commissioner, 163 F.2d 891, 892 (5th Cir. 1947); Kramer v. Commissioner, 89 T.C. 1081, 1085 (1987). In the absence of surprise, disadvantage, or prejudice, we allow amendment of pleadings under Rule 41 until our decision is filed, Stromsted v. Commissioner, 53 T.C. 330, 340 (1969); Markwardt v. Commissioner, supra; Estate of Horvath v. Commissioner, 59 T.C. 551, 555-556 (1973); see Ware v. Commissioner, 92 T.C. 1267, 1268-1269 (1989). Petitioner does not suggest that he has evidence which might have been offered at trial to overcome the collateral estoppel effect of his conviction. To the contrary, petitioner's evidence of his mental state during the years at issue is marshalled, in part, to vitiate the collateral estoppel defense. Petitioner was fully prepared for trial. We, therefore, will not foot fault respondent in this case because of his deficient pleadings practice. Substantive Issues
1. Collateral Estoppel by Conviction -- 1976 through 1979
Relying on the three-part test of Montana v. United States, 440 U.S. 147, 153-155 (1979), *607 petitioner argues that his criminal conviction under section 7203 does not collaterally estop him from proving a mental illness as the reasonable cause for his failure to file his returns for 1976 through 1979. Petitioner argues that: (1) he did not have a full and fair opportunity to litigate the issue of his mental illness at his criminal trial, (2) the issues presented in this case are not the same as those in his prior criminal case and the controlling facts have changed significantly because he did not present evidence of his mental illness at his criminal trial, and (3) his attorney's failure to present evidence of his mental illness at his criminal trial was ineffective assistance of counsel, a special circumstance that warrants an exception to the application of collateral estoppel. See Montana v. United States, supra at 155; Meier v. Commissioner, 91 T.C. 273, 283 (1988), on appeal (D.C. Cir., Jan. 24, 1989). Citing Kotmair v. Commissioner, 86 T.C. 1253 (1986), respondent argues that petitioner's criminal conviction under section 7203 conclusively establishes that his failure to file returns for 1976 through 1979 was *608 due to willful neglect, not reasonable cause, and he is collaterally estopped to contend otherwise. We agree. The foundation for petitioner's argument that the issue here is new, that facts have changed, and that a special circumstance exists is that two doctors have diagnosed his mental illness. We do not believe that that foundation will support a conclusion that petitioner's criminal conviction should be ignored in deciding this case. First, it is clear from the record that petitioner had a full and fair opportunity to litigate the issue of his mental illness in his earlier criminal trial. In fact, petitioner made a conscious choice not to raise the issue of his mental competency as a defense in his criminal trial despite the advice of his criminal defense attorney. During his criminal trial, petitioner was faced with the possibility of a prison sentence and had every incentive to defend the charges fully and vigorously. His criminal trial lasted two days during which he had every opportunity to present evidence and call witnesses. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332 (1979). Second, the doctors' testimony about petitioner's mental illness does *609 not alter any controlling facts of petitioner's conviction. Petitioner has made no showing that this evidence was unavailable during the criminal trial. Klein v. Commissioner, 880 F.2d 260 (10th Cir. 1989), affg. a Memorandum Opinion of this Court. Petitioner cannot argue several years after his criminal conviction that the facts were different than the proof on which he was convicted without showing at the very least that evidence of the "real" facts was unavailable at the earlier trial. This is especially true in petitioner's case because his conviction has been affirmed by the Third Circuit. Therefore, we find no change is shown in the controlling facts to justify disregarding the prior determinations in the criminal trial. Montana v. United States, supra at 161. Finally, petitioner's assertion of ineffective assistance of counsel is not appropriately raised in this forum. Although Mr. Martin and petitioner may now feel that they should have presented such a defense at the criminal trial, the issue of effectiveness of counsel should have been argued to the Third Circuit Court of Appeals and not this forum. If petitioner's case was not *610 effectively presented at the first trial, it was his fault; affording a second opportunity to litigate the matter should not be allowed absent compelling reasons of injustice. Klein v. Commissioner, supra, quoting Jones v. United States, 466 F.2d 131, 136 (10th Cir. 1972). Collateral estoppel would be useless if it could be avoided by debating the degree of effort that a party put into prior litigation. Klein v. Commissioner, T.C. Memo. 1984-392, affd. 880 F.2d 260 (10th Cir. 1989). We note that our holding also avoids an unseemly review of the criminal trial transcript which was already reviewed on appeal by the Third Circuit. Petitioner is liable for the additions to tax for willful failure to file pursuant to section 6651(a)(1) and for negligence pursuant to section 6653(a). Kotmair v. Commissioner, supra at 1264. 2. Evidence of Willful Failure to File and Negligence -- 1974, 1975, and 1980 through 1984
Petitioner bears the burden of proving that respondent erred in determining the additions to tax. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). *611 Section 6651(a)(1) provides for an addition to tax of five percent of the tax due for failure to file a Federal income tax return. If the failure did not result from "willful neglect," and was "due to reasonable cause," the addition will not be imposed. Section 6651(a)(1). "Willful neglect" has been interpreted to mean a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. 245, 246 (1985). "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nevertheless unable to file the returns within the prescribed time. Sec. 301.6651-1(c)(1), Proced. and Admin. Regs. Section 6653(a) imposes an addition to tax of five percent of an underpayment if any part is due to negligence or intentional disregard of rules and regulations. For 1981 through 1984, section 6653(a)(2) imposes a further addition to tax of 50 percent of the interest payable on the portion of the underpayment attributable to negligence or the intentional disregard of the rules and regulations. For purposes of section 6653(a), "negligence" is defined as lack of due care or failure to do what a reasonable and *612 prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Citing the Supreme Court's decision in United States v. Boyle, supra, petitioner argues that he suffered from a mental illness that made him incapable of "ordinary business care and prudence." We acknowledge that a taxpayer's mental infirmity could be "reasonable cause" to fail to file returns, see Brown v. United States, 630 F. Supp. 57 (M.D. Tenn. 1985), but in this case we find that petitioner has not demonstrated that he was suffering from a mental infirmity that excused his behavior. See Estate of Brandon v. Commissioner, 86 T.C. 327, 339 (1986), revd. and remanded on another issue 828 F.2d 493 (8th Cir. 1987). Petitioner argues that we must accept his uncontroverted expert evidence on the issue of his mental illness. We are not bound, however, by the conclusions of his expert witnesses, even though not contradicted. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1331 (5th Cir. 1987), affg. a Memorandum Opinion of this Court; United States v. Benus, 196 F. Supp. 601 (E.D. Pa. 1961), *613 affd. per curiam 305 F.2d 821 (3d Cir. 1962); Neville Coke & Chemical Co. v. Commissioner, 148 F.2d 599, 603 (3d Cir. 1945). We look at the substance of the witnesses' testimony as well as their conclusions and weigh the experts' testimony along with all other relevant evidence, including petitioner's testimony. Owensby & Kritikos, Inc. v. Commissioner, supra.
Despite the doctors' sincere beliefs in their diagnoses, we are skeptical that petitioner continuously suffered from debilitating mental illness during the years at issue. We do not totally dismiss the doctors' diagnoses; we simply do not find their testimony sufficiently convincing in the face of other evidence in the record. The diagnoses were made four years after the latest and 14 years after the earliest of the years in issue. Petitioner, who held a graduate degree in psychology and had prior experience in administering personality tests, knew that the examinations were being conducted because of the tax liabilities against him and at the direction of his attorneys. The evidence shows that he displayed no signs of mental illness at work during the years in issue. *614 He was not treated for mental illness before Dr. Berman first examined him just seven months prior to the trial in this case. Most importantly, neither doctor could state whether petitioner may not have been in a remission long enough to appreciate his duty to file returns. Petitioner was fully aware of his duty to file income tax returns. Indeed, he specifically recognized that he had not complied with the Federal tax filing requirements in correspondence with his senator. Although beginning in 1974 petitioner may not have enjoyed the prestige of employment that he had prior to the seizure of his business assets in 1971, he rose to positions of responsibility and authority. We cannot accept that petitioner could rebuild a career, and yet suffer a mental illness that kept him from appreciating his duty to pay taxes. See McCue v. Commissioner, T.C. Memo. 1983-580. Additionally, in 1978, petitioner started an entrepreneurial company that required his time, attention, and ingenuity. Petitioner's only setbacks at work occurred in 1983 and 1984, during his criminal trial and his subsequent prison term. Petitioner's actions suggest that petitioner was not so out *615 of touch with reality during the years in issue to be unaware of his obligation to file. We believe that petitioner understood his obligation to file returns and deliberately chose not to do so. At trial and at numerous times during the tax years in issue, petitioner admitted that he had an obligation to file returns. His awareness of his obligation to file returns is also revealed by his persistent requests to respondent's agents to help with filing returns on which he could claim damages for seizure of his business. Petitioner was fully aware of the Government's refusal to compensate him for the destruction of Mintmaster, and he knew that he had no legal recourse against the Government for his claims. Petitioner paid no Federal taxes as a backhanded way of compensating himself on claims that would otherwise not be compensated. With deliberation petitioner evaded his obligation to pay Federal income taxes, not as a result of "paralysis," but by falsely claiming to be exempt from Federal income tax withholding. Yet petitioner was able to fulfill his obligation to have state and FICA taxes withheld. Additionally, petitioner insisted on taking deductions for "antitrust violations" *616 on his late returns despite specific legal advice that the deductions would be disallowed. We find that petitioner acted with willful neglect, not reasonable cause, and acted negligently and with intentional disregard of the rules and regulations so as to warrant imposition of the additions to tax under both sections 6651(a)(1) and 6653(a) for the years 1974 through 1984. We believe that petitioner's bitterness and resentful behavior caused his repeated failure to file over the 10-year period. Petitioner's failure to file was, therefore, due to willful neglect, not to a mental illness. United States v. Benus, 196 F. Supp. at 603; United States v. Farris, 517 F.2d 226, 229 (7th Cir. 1975). Only when petitioner became convinced by his tax attorney that he faced violating the terms of his probation and could no longer evade his filing obligation did he agree to file the returns. It is evident that petitioner did not exercise ordinary business care and prudence, but instead consciously and intentionally failed to file his returns without reasonable cause. Bradley v. Commissioner, 57 T.C. 1, 11 (1971); Bunnel v. Commissioner, 50 T.C. 837, 843 (1968). *617 3. Reliance on Advice of Counsel -- 1980 through 1984
Petitioner argues that he is absolved of liability for the additions to tax for 1980 through 1984 because he reasonably relied on the advice of his tax attorney not to file returns during his criminal investigation. When a competent tax attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice, even when such advice turns out to have been mistaken. United States v. Boyle, 469 U.S. 241, 250 (1985); Estate of Paxton v. Commissioner, 86 T.C. 785, 819 (1986). The rationale behind this rule is that it is reasonable for the taxpayer to rely on the substantive advice of a professional. United States v. Boyle, supra at 251. One does not have to be a tax expert, however, to know that tax returns have fixed filing dates and that taxes must be paid when they are due. United States v. Boyle, supra at 251. While a taxpayer who has relied upon an expert's advice that he is not legally obligated to file a return may have satisfied the "reasonable cause" requirement, reliance *618 upon an expert is not reasonable in situations in which the taxpayer is advised that a return is due but he should not file. Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir. 1989), affg. 86 T.C. 492 (1986) (advice not to file because no addition will be incurred was not reasonable cause); Ballard v. Commissioner, 854 F.2d 185, 189 (7th Cir. 1988), revg. a Memorandum Opinion of this Court (advice not to file because no tax is due was not reasonable cause). Advising a taxpayer to delay filing due to a pending criminal investigation is not substantive tax advice but a tactical maneuver. Petitioner understood that Mr. Martin was not giving his advice based on his opinion that petitioner did not have a legal obligation to file returns for those years. Instead, petitioner knew that Mr. Martin was concerned about the implications the filing would have on his criminal case. Petitioner knew that his returns were due, and he purposely waited until 1985 to file them. Taxpayers are not excused from filing a delinquent return because they fear that doing so might prejudice them in other litigation. Thomas v. Commissioner, T.C. Memo. 1984-72. *619 Petitioner was fully aware of his obligation to file Federal income tax returns for 1980 through 1984. Petitioner's reliance upon Mr. Martin's advice not to file does not constitute reasonable cause. Petitioner, therefore, willfully failed to file timely income tax returns and is liable for the additions to tax pursuant to section 6651(a)(1). Petitioner was also negligent and intentionally disregarded the rules and regulations by failing to file Federal income tax returns for the years 1980 to 1984. Reliance on expert advice does not necessarily insulate the taxpayer from the negligence addition. Perrett v. Commissioner, 74 T.C. 111, 134 (1980), affd. without published opinion 679 F.2d 900 (9th Cir. 1982). As we found previously, petitioner's tax counsel advised petitioner against taking "antitrust violation" deductions which petitioner intentionally took anyway. In addition, petitioner intentionally disregarded the rules and regulations by filing false Forms W-4 with his employers exempting himself from withholding. 4. Dependency Exemption for 1980 and 1981
Petitioner claims that he is entitled to an exemption for his daughter pursuant *620 to section 151(e) for 1980 and 1981. For 1980, we believe petitioner's testimony that he supplied over half of the support for his daughter as required by section 152(a) and 152(e). Petitioner's testimony is corroborated by the fact that petitioner's wife did not leave the family home with the child until August 1980. During 1981, petitioner's daughter did not live with him. Nevertheless, petitioner testified credibly without challenge on cross-examination that he provided more than $ 1,200 in support for that year. We are not required to accept petitioner's generalized testimony, Davis v. Commissioner, 88 T.C. 122, 141 (1987), affd. 866 F.2d 852 (6th Cir. 1989), but petitioner testified credibly, and there is no basis in the record for disregarding his testimony. Therefore, petitioner is entitled to the exemption for 1981 as well as for 1980. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue. * 50% of interest due on $ 9,172.00 ** 50% of interest due on $ 11,413.00. *** 50% of interest due on $ 11,120.00. **** 50% of interest due on $ 983.00.↩
2. In 1974, $ 37.72 was withheld; in 1977, $ 91.30 was withheld; and in 1984, $ 1,200 was withheld as a required by the terms of petitioner's probation.↩
3. Dr. Cooke diagnosed delusional disorder and cyclothymia while Dr. Berman diagnosed bipolar affective disorder with delusion.↩
4. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise specified.↩