ERNEST R. LILLEY, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lilley v. Commissioner
Docket No. 47118-86
United States Tax Court
T.C. Memo 1990-96; 1990 Tax Ct. Memo LEXIS 96; 58 T.C.M. (CCH) 1517; T.C.M. (RIA) 90096; February 27, 1990
Ian M. Comisky, Edward I. Foster, and David M. Kuchinos, for the petitioner. Carol-Lynn E. Moran, for the respondent. WILLIAMS
SUPPLEMENTAL MEMORANDUM OPINION WILLIAMS, Judge: This case is before the Court on petitioner's motion for reconsideration of the Court's opinion pursuant to Rule 161 of the Tax Court Rules of Practice and Procedure. The Court's opinion in this case, reported at T.C. Memo. 1989-602, was filed on November 1, 1989. Petitioner's motion was timely filed on November 30, 1989. *97 Petitioner asks that the Court reconsider our findings of fact and conclusions of law with respect to the following issues: (1) whether petitioner was collaterally estopped at trial from denying that the additions to tax for failure to file Federal income tax returns, and for negligence for the taxable years 1976 through 1979 should apply; (2) whether petitioner suffered from a mental illness during the years in issue that prevented him from timely filing Federal income tax returns; and (3) whether petitioner's reliance on his tax attorney's advice not to file Federal income tax returns for taxable years 1980 through 1984 was reasonable for purposes of precluding additions to tax for failure to file under section 6651(a)(1), [1] and negligence under either section 6653(a) or 6653(a)(1) and 6653(a)(2). In the opinion, we considered whether petitioner was prevented from filing Federal income tax returns during the years in issue due to mental illness. His alleged mental illness arose out of the seizure of his business assets by the United States Secret Service in 1971. The *98 seizure was unwarranted, and though the assets were returned six months later, petitioner's business was ruined. Petitioner was convinced that the Government owed him reparations and sought to recover his damages by offsetting his Federal income taxes. He stopped filing tax returns. Petitioner, however, knew that he had an obligation to file returns. In anticipation of trial in this Court, petitioner was examined by Dr. Perry A. Berman, a psychiatrist, and Dr. Gerald Cooke, a psychologist. Dr. Berman met with petitioner biweekly for 7 months and diagnosed his condition as a bipolar affective disorder with delusion. After administering a battery of personality tests, Dr. Cooke testified at trial that petitioner suffered from a delusional disorder with cyclothymia. Both doctors testified that petitioner suffered from "a mental illness that paralyzed him in Federal income tax matters," and "caused him to believe that he was being persecuted by the Federal Government." Petitioner argued that his mental illness prevented him from timely filing tax returns and excused him from the additions to tax. In our opinion, we sustained the additions to tax for failure to file and for negligence. *99 Although a mental illness can be a reasonable cause for a failure to file returns, we were not convinced that petitioner suffered from a continuous mental illness that prevented him from filing. We believed, instead, that petitioner's failure to file resulted from his bitterness and resentment toward the Federal Government and that he acted with purpose and deliberation in failing to file. From 1981 through 1985, Thomas F. Martin ("Martin"), petitioner's tax attorney during the criminal investigation and trial, advised him not to file returns for taxable years 1980 through 1984 because it "was against his best interests" during the criminal investigation. Petitioner argued on brief that his failure to file returns in taxable years 1980 through 1984 was reasonable because his tax attorney had advised him not to file. We concluded that petitioner could be expected to know and did, in fact, know that Federal income tax returns must be filed and taxes paid at certain fixed times. In 1983, petitioner was tried and convicted of the criminal charge of willful failure to file Federal income tax returns for taxable years 1976 through 1979. Petitioner refused to allow his attorney to *100 present evidence of his mental condition at the criminal trial. The conviction was affirmed by the Third Circuit Court of Appeals. Petitioner argued at trial in this Court and on brief that he was not collaterally estopped from denying liability for the addition to tax for failure to file for 1976 through 1979 because (1) he had not had a full and fair opportunity to litigate the issue of his mental condition at trial, (2) the facts had changed significantly since the criminal trial, and (3) his attorney's failure to present evidence of petitioner's mental condition constituted ineffective assistance of counsel. We held that he had enjoyed a full and fair opportunity to prove his mental condition but for reasons of his own had chosen not to do so. We concluded that the facts which he believes distinguish his criminal case from the case before us, viz, the testimony of his two doctors, would have been available at his criminal trial if he had chosen to present them. Finally, we concluded that petitioner's ineffective assistance of counsel claim would have been more appropriately raised on appeal and that we could not consider it. *101 Reconsideration of proceedings is generally denied in the absence of substantial error or unusual circumstances. Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). Although his request is in a footnote to his motion, petitioner first asks us to reconsider whether he was collaterally estopped from denying the applicability of the additions to tax for taxable years 1976 through 1979. Petitioner makes no argument in his supporting memorandum or supporting materials on this point, and we believe our opinion fully states our reasons why petitioner is collaterally estopped. We do not reconsider our analysis of this issue. The second issue petitioner asks us to reconsider is whether he was prevented from filing income tax returns by mental illness. Two doctors testified about petitioner's mental condition. We considered their testimony in light of the other facts evidenced in the record. We are entitled to accept or reject the testimony of expert witnesses according to our sound judgment. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Estate of Gilford v. Commissioner, 88 T.C. 38, 56 (1987). *102 Despite the doctors' testimony, we concluded that we could not find that petitioner's failure to file his income tax returns was attributable to a mental condition because (1) there could have been periods of remission, (2) petitioner's actions were purposeful, resentful, and vindictive, and (3) Dr. Berman and Dr. Cooke had been treating petitioner for a short time before trial and their testimony was not compelling. Attached to his motion, petitioner submitted an affidavit of Dr. Eugene G. d'Aquili, a Professor of Psychiatry, who has treated petitioner since April of 1989. Dr. d'Aquili states that petitioner's "failure to file taxes was the direct result of his believing that, not only was fiscal reparation owed him by the federal government, but that he would infallibly be exonerated in court because his cause was just." Dr. d'Aquili agreed with the diagnoses of Dr. Berman and Dr. Cooke. Dr. d'Aquili's report does not persuade us to reconsider our decision. We do not believe that this evidence establishes that petitioner's failure to file was attributable to any condition other than his sense of grievance against the government. The third issue petitioner asks us to reconsider *103 is whether petitioner reasonably relied on Martin's advice not to file tax returns during the criminal investigation. Petitioner maintains that Martin's advice was related to petitioner's rights under the Fifth Amendment of the United States Constitution and not to litigation tactics. We agree that if a taxpayer reasonably relies on an attorney's substantive legal advice that he is not required to file a return, that reliance constitutes reasonable cause within the meaning of sections 6651 and 6653, even if that advice is incorrect. United States v. Boyle, 469 U.S. 241, 250 (1985). In order for the taxpayer's reliance to be reasonable, however, the attorney's advice must concern substantive legal rights. 469 U.S. at 251; Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986). In this case it is not at all obvious that Martin had the Fifth Amendment privilege in mind when he advised petitioner not to file. Petitioner argues that when Martin advised petitioner that filing during the criminal investigation would place him at peril, "The *104 obvious basis for Mr. Martin's legal advice was that the filing of the federal income tax returns during a federal criminal tax investigation would force petitioner to incriminate himself in violation of his Fifth Amendment privileges against self-incrimination." Specifically, petitioner notes that filing during the criminal investigation could have served as an admission and shown willfulness. We note, however, that during the trial neither petitioner nor Martin mentioned a Fifth Amendment privilege, the fear of self-incrimination or any context in the course of the criminal investigation or trial in which the privilege had been specifically discussed. Moreover, petitioner did not discuss or refer to Fifth Amendment considerations in his opening or reply briefs. In short, there is not a shred of evidence in the record to support the claim that Martin advised petitioner that he had a Fifth Amendment privilege not to file his income tax returns during the criminal investigation. We believe that if the Fifth Amendment privilege had been discussed, it would have been referred to at trial or on brief. Furthermore, we note that *105 the Fifth Amendment does not give a taxpayer the right to refuse to file at all but only to refuse to incriminate himself on his tax return. Garner v. United States, 424 U.S. 648, 650 (1976); United States v. Sullivan, 274 U.S. 259, 263 (1927); Stubbs v. Commissioner, 797 F.2d 936, 938 (11th Cir. 1986); United States v. Carlson, 617 F.2d 518, 523 (9th Cir. 1980); United States v. Edelson, 604 F.2d 232, 234 (3d Cir. 1979). Martin was experienced in criminal tax litigation, and we believe that he was cognizant of well-established law. Although a taxpayer is entitled to rely on incorrect advice from an expert adviser, the fact that the privilege could not have been validly asserted is additional evidence that it was never discussed. Petitioner submitted Martin's affidavit to establish that Martin did refer to the Fifth Amendment privilege when he counseled petitioner not to file. In his affidavit, Martin states that the basis for his advice to petitioner was that "filing such returns during the pendency of the criminal investigation could have incriminated Petitioner in violation of his Fifth *106 Amendment privilege against compulsory self-incrimination." Martin did not say, however, that he advised petitioner that his Fifth Amendment privilege excused him from filing returns. We conclude that petitioner has not established sufficient grounds for us to reconsider our opinion on this issue. The trial record is silent on whether petitioner was advised to exercise his Fifth Amendment privilege. Petitioner does not appear to have been entitled to claim the privilege, and we believe that Martin would not have advised petitioner contrary to law. Petitioner had ample opportunity to bring out all the evidence that he could find in his favor. The absence of any suggests that there was none. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Accordingly, petitioner's motion for reconsideration of the Court's opinion is denied. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩