DOUGLAS D. KEMMERER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kemmerer v. Commissioner
Docket No. 16642-89
United States Tax Court
T.C. Memo 1993-394; 1993 Tax Ct. Memo LEXIS 405; 66 T.C.M. (CCH) 550; August 26, 1993, Filed *405 Decision will be entered under Rule 155. For petitioner: Richard V. D'Alessandro. For respondent: Caroline Ades-Pierri. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined the following deficiencies in and additions to Federal income tax for petitioner Douglas D. Kemmerer: Additions To Tax Sec.
Sec.
Sec.
Sec. Year
Deficiency
[1]6653(a)(1) 6653(a)(2)
6651(a)
6654 1982
$ 141,258
$ 7,063
[2]
$ 24,139
$ 8,538
1983
122,893
6,145
[2]
11,261
1,586
1984
199,447
9,972
[2]
22,739
4,085
1985
290,587
14,529
[2]
40,403
8,021
1986
[3] 122,378
3,830
[2]
7,818
1,989
1987
[3] 65,482
300
[2]
1,501
371
After concessions, the following issues remain for decision: 1. Whether petitioner is not liable for the additions to tax for failure to timely file *406 returns under section 6651 and negligence under section 6653 on the ground that he had a "simple phobia" of tax documents. We hold that he is liable under sections 6651 and 6653. 2. Whether petitioner may deduct his expenses of providing horse drawn carriages to charitable events from 1982 to 1987. We hold that he may not because he failed to adequately substantiate his expenses. 3. Whether petitioner may deduct employee business expenses for 1982 through 1987. We hold that he may deduct $ 7,951.10 for 1987. 4. Whether petitioner may deduct moving expenses and casualty losses for 1982. We hold that he may not. 5. Whether petitioner may use income averaging for 1982 through 1986. We hold that he may not for 1982, 1983, and 1984, but that, depending on the Rule 155 computations, he may for 1985 and 1986. 6. Whether petitioner is liable for additions to tax for failure to make estimated tax payments under section 6654 for 1982 through 1987. We hold that he is. 7. Whether withholding is taken into account in computing the additions to tax under sections 6653(a), 6651(a), and 6654 for 1982 through 1987. We hold that withholding is not taken into account for purposes *407 of section 6653(a), but is for sections 6651 and 6654. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner resided in Oldwick, New Jersey, when he filed the petition. Petitioner's home is about 39 miles from New York City, and 10 miles from Far Hills, New Jersey. He was unmarried during the years in issue. He married Queenie Hurdman in June 1990. Petitioner studied engineering, general business, and economics at Lehigh University and the Universities of California and Montana. He was the senior vice president for sales at Integrated Energy Co. in San Francisco, California, before moving to New York City in 1982. His residence in California was 3,000 miles from his new principal place of work in New York. Petitioner was corporate vice president for the securities firm Drexel Burnham & Lambert in New York from late 1981 to early 1986. His duties included marketing new and nonstandard stock and bond products. From March 1986 to December 1987, petitioner was the senior *408 vice president of sales and marketing for Southmark/Envicon, a large real estate company. Petitioner worked long hours during the years in issue, typically 7 a.m. to 9 p.m., almost 7 days a week, most weeks. Occasionally, he took short vacations. When he vacationed he was in constant communication with his office. 2. Petitioner's Failure To File Tax Returns and His Diagnosis of "Tax Phobia"
Petitioner's father filed his first income tax returns for him when he had summer construction jobs. Later, but before the years in issue, petitioner retained a tax attorney or accountant to file his tax returns. However, petitioner did not file returns for 1977 to 1987. Throughout those years, petitioner knew he had an obligation to file tax returns and to pay taxes. Petitioner did not cash a refund check he received from the Internal Revenue Service in 1982 and did not sign the 1990 joint return that his wife prepared. Petitioner did not respond to extensive correspondence he received from respondent from 1985 to 1989 relating to his failure to file, including a letter warning him he might face criminal prosecution and imprisonment. Petitioner was examined by a psychiatrist, *409 Dr. Daniel Greenfield, once, 1 month before the trial of this case. Dr. Greenfield diagnosed petitioner as having a simple phobia of preparing tax returns. Dr. Greenfield suggested no treatment for petitioner. Petitioner was the first person Dr. Greenfield diagnosed with tax phobia. 3. Petitioner's Participation in Charitable Events
From 1982 to 1987 petitioner owned an average of four or five horses at a time and more than three carriages. Petitioner provided and drove a horse-drawn carriage in various charitable events during the years in issue. The charities used the carriages to publicize the event, provide an interesting form of transportation for those attending, and raise money. Petitioner took one or more carriages to the following events: Event or sponsor
Location
Month
1982
Winterthur Point-to-
Wilmington, DE
May
Point Races
1983
Winterthur Point-to-
Wilmington, DE
May
Point Races
Essex Foxhound Race
Far Hills, NJ
Oct.
Meeting Assn.
National Horse Show
New York, NY
Oct.
1984
Winterthur Point-to-
Wilmington, DE
May
Point Races
An Evening in Old
Saratoga Springs,
Aug.
Saratoga
NY
Ludwig's Corner
Ludwig's
Sept.
Horse Show
Corner, PA
Far Hills Race
Far Hills, NJ
Oct.
Meeting Assn.
1985
Middletown Place
Charleston,
N/A [1]
Foundation
SC
Middleburg Race Meet
Middleburg, VA
Apr.
Strawberry Hill Races
Richmond, VA
Apr.
Winterthur Point-to-
Wilmington, DE
May
Point Races
An Evening in Old
Albany, NY
June
Saratoga (publicity)
An Evening in Old
Saratoga Springs,
Aug.
Saratoga
NY
University of
Amherst, MA
Sept.
Massachusetts
Essex Foxhound Race
Far Hills, NJ
N/A [1]
Meeting Assn.
1986
Strawberry Hill Races
Richmond, VA
Apr.
Winterthur Point-to-
Wilmington, DE
May
Point Races
Devon Horse Show and
Devon, PA
May
Country Fair
An Evening in Old
Saratoga Springs,
Aug.
Saratoga
NY
University of
Amherst, MA
N/A [1]
Massachusetts
Preservation Society
Newport, RI
Aug.
of Newport County
Polo Drive
Somerset County,
N/A [1]
NJ
Washington Internatl.
Washington, DC
Oct.
Horse Show Monumental
Carriage Marathon
1987
Winterthur Point-to-
Wilmington, DE
May
Point Races
Fairman Rogers Drive
Philadelphia,
May
PA
Winterthur Brandywine
Chadds Ford, PA
May
Conservancy
An Evening in Old
Saratoga
Aug.
Saratoga
Springs, NY
Polo Drive
Somerset County,
Aug.
NJ
Far Hills Race
Far Hills, NJ
Oct.
Race Meeting Assn.
*410 Petitioner participated in a parade of carriages at many of these events. He usually drove the carriage past the spectators and then put it on display. He often attended photo sessions to publicize the events. At some events, passengers contributed to the charity to ride on petitioner's carriage. Petitioner provided food for the guests riding on his carriage. He paid various fees to stable, feed, and provide medical care for his horses at some of the events. Ms. Hurdman accompanied petitioner to two events in 1985, six events in 1986, and five events in 1987. She rode on the carriage with him during the events. Petitioner's aunt, Marilyn Dell, accompanied him to Newport in 1986 and to several other events. She handled many of the arrangements for petitioner. For example, she (and sometimes Ms. Hurdman) shopped for food and prepared lunch for the carriage guests. Petitioner occasionally took other guests to these events. For example, David Dreyfess and Hank Collins accompanied him to Newport in August 1986. Petitioner also took grooms to the events, although no grooms or other staff members traveled to Newport. Petitioner enjoyed horses and horse carriages. He did not *411 generally take his horses off the farm other than to charitable events. He generally rode his horses about once a week, but did not ride them in the winter. Petitioner broke his neck in 1982 or 1983 in a carriage accident. He wore a device to stabilize his head and neck for the 6 months following his injury. He was bedridden for 2 or 3 months during his recuperation. 4. Petitioner's Casualty Losses
In May 1982, petitioner's suitcase was lost during a flight from California to New York. He lost a suitcase containing a Chelsea ship's clock, three suits, six shirts, and a shaving kit. He recovered a $ 125 reimbursement from the airline. In October 1982, petitioner lost his Rolex wristwatch while horseback riding. He was not reimbursed for the loss. 5. Petitioner's Business Expenses
Petitioner had various business expenses during 1987 while employed by Southmark/Envicon. He was required to travel to meet with brokers who worked for him, review their work, and meet with clients. He submitted receipts and an expense report for reimbursement to the president of the Envicon division. He did not keep copies of these records. Petitioner was not reimbursed for these *412 expenses because Southmark/Envicon went out of business. Petitioner could not obtain the records he submitted for reimbursement. In 1987, petitioner paid $ 507 for airline travel, $ 3,961.53 for hotels while away from home on Southmark/Envicon business, $ 3,449.87 for business-related meals, and $ 32.70 for other transportation. OPINION 1. Petitioner's Claim of Simple Phobia of Tax Documents and Failure To File for 1982 to 1987
Section 6651(a)(1) imposes an addition to tax for failure to file a tax return unless the taxpayer shows that the failure to file is due to reasonable cause and not due to willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985). To prove reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but was nevertheless unable to timely file the return. Crocker v. Commissioner, 92 T.C. 899, 913 (1989). Petitioner contends that he suffers from a simple phobia of tax documents and preparing tax returns, a mental infirmity that he contends made him incapable of filing *413 returns. He argues that this is reasonable cause for his failure to file and thus he is not liable for the additions to tax under section 6651. Petitioner argues that the severity of his simple phobia is shown by his inability to cash a refund check from respondent in 1982, his failure to respond to letters from respondent warning of possible criminal prosecution, and the fact that he did not sign the 1990 return that his wife prepared. Dr. Greenfield, a practicing psychiatrist for many years, testified that petitioner was mentally incapable of complying with the filing requirements of the tax law. He stated that petitioner has suffered from this phobia since his teens and through the time of trial. He testified that this diagnosis is consistent with petitioner's intelligence and ability to perform the duties of his employment. In Dr. Greenfield's opinion, petitioner's infirmity prevented him from filing tax returns for the years in issue and also prevented him from hiring others to prepare his tax returns. We are not bound by the conclusion of an expert witness. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1331 (5th Cir. 1987), affg. *414 T.C. Memo. 1985-267; United States v. Benus, 196 F. Supp. 601, 602-603 (E.D. Pa. 1961), affd. per curiam 305 F.2d 821 (3d Cir. 1962). As this Court stated in Lilley v. Commissioner, T.C. Memo. 1989-602: Despite the doctors' sincere beliefs in their diagnoses, we are skeptical that petitioner continuously suffered from debilitating mental illness during the years at issue. We do not totally dismiss the doctors' diagnoses; we simply do not find their testimony sufficiently convincing in the face of other evidence in the record.
Petitioner consulted Dr. Greenfield once. That meeting was 1 month before trial, which looks to us more like trial preparation than credible diagnosis. Dr. Greenfield described petitioner's illness as a "life-long inhibiting condition", for which he suggested no treatment. Petitioner had previously engaged a tax attorney to prepare his returns. Dr. Greenfield's testimony does not convince us that petitioner did not understand his duty to file tax returns. A taxpayer's disability or mental incapacity may constitute reasonable cause *415 for failure to file returns. United States v. Boyle, supra at 248 n.6; Brown v. United States, 630 F. Supp. 57 (M.D. Tenn. 1985). While general incompetence, mental illness, alcoholism, or other incapacity may excuse a taxpayer from filing, a taxpayer's selective inability to perform his tax obligations in view of his ability to perform normal business operations does not excuse his failure to file. See Bear v. Commissioner, T.C. Memo. 1992-690; Bloch v. Commissioner, T.C. Memo. 1992-1; Fambrough v. Commissioner, T.C. Memo. 1990-104. Petitioner held responsible positions at Drexel Burnham and Southmark/Envicon. In Fambrough v. Commissioner, supra, we held that although the taxpayer cared for his sick wife and brother during the years in issue, his failure to file was not due to reasonable cause because he continued to perform his daily business operations. We conclude that petitioner's failure to file was due to willful neglect and not reasonable cause, and he is therefore liable for the *416 additions to tax under section 6651. 2. Negligence
Section 6653(a) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985). As discussed above, we do not believe petitioner had reasonable cause for his failure to file returns. For the same reasons, we conclude that petitioner is liable for the additions to tax for negligence for the years in issue. See Emmons v. Commissioner, 92 T.C. 342, 349-350 (1989), affd. 898 F.2d 50 (5th Cir. 1990).
*417 3. Charitable Contributions
The taxpayer bears the burden of proving he is entitled to deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must maintain records which are sufficient to substantiate claimed deductions and credits. Sec. 6001. A taxpayer may deduct charitable contributions if, among other requirements, the contribution is verified under regulations prescribed by the Secretary. Sec. 170(a)(1). Respondent contends that petitioner did not meet the substantiation requirements of section 1.170A-13(a)(1) and (d)(1), Income Tax Regs., because he did not maintain written records of his charitable contributions. Petitioner has made no convincing argument that respondent's construction and application of the regulation here is incorrect. Petitioner asks this Court to apply the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to allow his charitable contribution deductions. See Bert v. Commissioner, T.C. Memo. 1989-503, and Francis v. Commissioner, T.C. Memo. 1988-226, each applying *418 Cohan v. Commissioner, supra, to post-1982 out-of-pocket expenses. Petitioner argues that his testimony was sufficient to establish the amount of his charitable out-of-pocket expenses. Under certain circumstances, where a taxpayer has inadequate records to substantiate claimed deductions, we may estimate the amount of the expenses. Cohan v. Commissioner, supra.If we make an estimate, we may bear heavily on petitioner "whose inexactitude is of his own making." Id. at 544. We must have some basis to estimate expenses. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). As stated in Williams v. United States, supra at 560, Cohan requires that "there be sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse." At trial, petitioner *419 relied solely on his own testimony to substantiate most of his expenses of providing a carriage and grooms for various charitable events. Petitioner testified that he had unreimbursed expenses from charitable events for compensation paid to his grooms; meals and lodging for his grooms, Ms. Hurdman, Ms. Dell, and himself; food and drink for his carriage guests; transportation costs to and from the event; and the care of his horses. He had only limited documentary evidence of his out-of-pocket expenditures. Petitioner claims that he previously had records, but that they were destroyed in a flood of his home. He did not say when the flood occurred. He did not convince us that the records existed at the time of the alleged flood, or even that there was a flood. He also testified, primarily from memory, about the number of horses, carriages, and grooms he took to each event for which he deducted charitable contributions. We do not find his memory trustworthy after all this time, particularly in light of his inability to recall other important details discussed below. Petitioner did not call any grooms to testify about the charitable events or the grooms' compensation. He did not *420 call Ms. Dell to testify about her role at the events. Ms. Hurdman testified, but she had no knowledge about most of the events. She did not convince us her presence at the events was not primarily for personal reasons. Petitioner provided no documentary evidence concerning the distances to or the amounts spent at each event. He did not contact hotels, etc., to reconstruct his costs for meals and lodging he furnished to his grooms. Petitioner's credibility is impugned by his inability to remember details such as when the alleged flood occurred, when he broke his neck, and when he began work at Drexel Burnham and Southmark/Envicon. Petitioner claimed deductions for amounts paid by Ms. Hurdman and Ms. Dell. However, he had no paper trail showing that he reimbursed them. Any out-of-pocket expenses they incurred are deductible, if at all, by Ms. Hurdman or Ms. Dell, not petitioner. Petitioner did not file tax returns from 1977 to 1987. In Gudenschwager v. Commissioner, T.C. Memo. 1989-6, the taxpayer did not file returns for 6 years, had no books or business records for those years, and relied on his own testimony (and that of an untrustworthy *421 former bookkeeper) as the only support for his claimed business expense deductions. The Court declined to apply Cohan, noting that the taxpayer "should not be rewarded for his refusal to maintain records and file tax returns." We conclude that petitioner has not established a sufficient basis from which we can estimate the amount of his charitable expenses. Thus, we uphold respondent's disallowance of petitioner's charitable contribution deductions. 4. Business Expenses
A taxpayer may deduct ordinary and necessary travel expenses of business trips away from home. Sec. 162(a)(2); Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). To be deductible under section 162, travel and entertainment expenses must meet the substantiation requirements of section 274(d). That is, the taxpayer must substantiate by adequate records or by sufficient evidence corroborating his own testimony the amount of the expense, the time and place of the travel or entertainment, the business purpose of the expense or trip, and the business relationship of the person entertained to *422 the taxpayer. Sec. 274(d). For business expenses other than travel and entertainment, petitioner bears the burden of proving that he incurred the expenses, that they were business related rather than personal, and that they were ordinary and necessary. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Chapman v. Commissioner, 48 T.C. 358, 365 (1967). Petitioner contends that he may deduct unreimbursed business expenses for entertainment and meals and lodging in connection with his employment at Southmark/Envicon. He periodically requested reimbursement by submitting receipts for his expenses. Petitioner did not keep a copy of these records. Southmark/Envicon went out of business before he was reimbursed, and petitioner could not obtain the records he submitted. Petitioner reconstructed some of his expenses using the American Express transcript for 1987 and his testimony at trial. Petitioner argues that he has met each of the requirements of section 274 by showing the amount, time, and place of the expense, its business purpose, and the business relation of the person entertained. Petitioner testified that *423 he incurred unreimbursed seminar expenses of $ 1,000 each year from 1982 to 1986 for a Robert Stanger business seminar, $ 250 each year from 1983 to 1986 for other seminars, and $ 150 for an investment seminar in 1987. Petitioner did not produce any records to verify that he attended the seminars, the amount of his expenses, or that they were business related. We hold that petitioner substantiated $ 7,951.10 in business expenses for 1987, and is entitled to deduct that amount. However, petitioner failed to meet his burden of proving he may deduct business expenses for 1982 to 1986 because he provided no records or other documentary evidence of the expenses he incurred in those years. His testimony alone is not sufficient to permit a deduction under these circumstances. See sec. 274(d). 5. Moving Expenses
Section 217(a) allows a taxpayer to deduct moving expenses incurred in connection with beginning work at a new principal place of work. The new location of the taxpayer's work must be at least 35 miles farther from the taxpayer's old residence than was the taxpayer's former principal place of work. Sec. 217(c)(1). Petitioner bears the burden of proving he is entitled *424 to a moving expense deduction. Welch v. Helvering, supra.
Petitioner moved more than 3,000 miles from California to New York to begin employment at Drexel Burnham. He testified that during 1982 he made three trips from California to New York, one by air and two by truck. Petitioner claims that he spent from $ 8,295 to $ 8,320 in unreimbursed moving expenses in connection with this move, and that he may deduct the cost of moving his goods and personal effects, his traveling expenses, including airfare, gasoline, meals and lodgings, and truck repairs, and his temporary living expenses at the new job location. Petitioner did not provide any documentary evidence of his moving expenses. He claims that he lost his records concerning the move in a flood of his home. As stated above, we are not convinced that the records existed at the time of the alleged flood, or even that there was a flood. We hold that petitioner has failed to prove that he may deduct moving expenses for 1982. 6. Casualty Losses
A taxpayer may deduct certain casualty losses to the extent they exceed $ 100 and 10 percent of the adjusted gross income of the individual. *425 Sec. 165(h)(1) and (2)(A)(ii). Petitioner claims he lost $ 4,095 in property in 1982. Petitioner had gross income of $ 291,091 for 1982. Regardless of the outcome of any of the other issues in this case, petitioner's claimed losses do not exceed 10 percent of his adjusted gross income for that year. Accordingly, we hold that petitioner may not deduct casualty losses for 1982. 7. Income Averaging
Petitioner claims that he may income average for 1982 to 1986. Sections 1301 to 1305, as in effect for 1982 and 1983, permit income averaging if the taxable income for the year in which averaging is elected exceeds 120 percent of the taxpayer's average taxable income in the 4 preceding years. For taxable years 1984, 1985, and 1986, the threshold is 140 percent and the base period is 3 years. The computation year is the year for which the taxpayer elects the benefits of averaging. Sec. 1302(c)(1). The taxpayer has the burden of showing the amount of base period income. Rule 142(a); Welch v. Helvering, supra. Petitioner has not provided any evidence of his taxable income for the base period years for computation years 1982, 1983, and 1984. *426 [1] Accordingly, petitioner cannot use income averaging for 1982, 1983, and 1984. The Rule 155 computation will show the amount of taxable income in the base period years before this Court and whether petitioner may use income averaging for 1985 and 1986. 8. Failure To Pay Estimated Tax
Where prepayments of tax, either through withholding or estimated tax payments, do not equal the percentage of total liability required to be paid as estimated tax, an addition to tax is imposed unless the taxpayer demonstrates that he qualifies for an exception. Sec. 6654. Petitioner does not so contend, and we conclude that none of the exceptions apply. Accordingly, we conclude that petitioner is liable for the addition to tax under section 6654. 9. Application of Prepayment Credits
Petitioner *427 argues that respondent should have based the additions to tax on the difference between the amount of tax due and the tax withheld, rather than on the entire amount of tax due. Respondent concedes that withholding credits are applied for purposes of calculating the delinquency and estimated tax additions under sections 6651 and 6654. The negligence additions under sections 6653(a)(1) and 6653(a)(1)(A) are not reduced based on taxes withheld from wages. Under section 6653(c), the addition to tax is based upon the statutory deficiency as defined in section 6211, with the tax on the return considered to be zero where no return was filed. Under section 6211 the deficiency is the difference between the tax due and the tax shown on the return (here, zero) or previously assessed. Withholding credits are not considered in computing the deficiency and thus do not figure into the computation of the addition to tax under section 6653(a)(1) (and section 6653(a)(1)(A)). However, for section 6653(a)(2) (and section 6653(a)(1)(B) for 1986 and 1987), prepayment credits reduce the amount of interest owed and therefore reduce the interest portion of the addition. To reflect the foregoing, *428 Decision will be entered under Rule 155. Footnotes
1. For 1986 and 1987, sec. 6653(a)(1) and (2) was renumbered sec. 6653(a)(1)(A) and (B)↩.
2. Fifty percent of the interest due on the deficiency.↩
3. The amounts determined in the notice of deficiency were $ 76,600 for 1986 and $ 6,004 for 1987. At trial, respondent amended the answer to increase the deficiencies to the amounts shown.↩
1. N/A = not available in the record.↩
1. The computation years for which petitioner elects income averaging are 1982 to 1986. The base years are: (a) for 1982: 1978-81; (b) for 1983: 1979-82; (c) for 1984: 1981-83; (d) for 1985: 1982-84; and (e) for 1986: 1983-85.↩