T.C. Memo. 2003-188


UNITED STATES TAX COURT



MARY CATHERINE PIERCE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8557-01.                    Filed June 30, 2003.



        P seeks relief, under sec. 6015, I.R.C.,
from income tax liabilities that were
assessed in accord with this Court's holding
in an earlier opinion.  In this proceeding, P
failed to plead, as an affirmative defense,
collateral estoppel as to one of the factual
issues in controversy, as required in Rule 39
of this Court's Rules of Practice and
Procedure.  P orally raised collateral
estoppel in her opening statement at the
beginning of the trial, and R did not object
or address the question of collateral
estoppel until R did so in his posttrial
brief.  No additional evidence is required to
decide whether any holding in our prior
opinion would result in an estoppel.  Rule
41(b)(1) of this Court's Rules of Practice
and Procedure provides that an issue may be
tried by implied consent where the issue was
not specifically pleaded.  R contends that
P's failure to specifically plead an

affirmative defense results in waiver of the defense.  P contends that collateral estoppel was placed in controversy with R's implied consent.

Held:  The requirement of Rule 39 of this Court's Rules of Practice and Procedure to plead an affirmative defense is satisfied in this case by the implied consent principles of Rule 41 of this Court's Rules of Practice and Procedure, and it is

Held further:  Respondent is not collaterally estoped from denying that P did not know or had no reason to know of the understatement, and it is

Held further:  P had reason to know of the understatement and it would not be inequitable to hold that P is not entitled to relief from joint liabilities under sec. 6015, I.R.C.


Robert J. Percy, for petitioner.

Robert E. Marum and Michael J. Proto, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Petitioner seeks relief from joint and several income tax liability under section 6015.[1]  The income tax liability derives from income tax deficiencies that were assessed in accordance with this Court's holding in Pierce v. Commissioner, T.C. Memo. 1997-411 (Pierce I) as follows:

---

[1] All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

| Year | Deficiency |
|------|-----------|
| 1984 | $3,513 |
| 1986 | 71,974 |
| 1987 | 539,914 |
| 1988 | 527,851 |
| 1989 | 102,323 |

Respondent determined that petitioner is not entitled to relief from joint and several liability under section 6015(b). Petitioner timely filed a petition seeking review of respondent's determination. The issues we consider are: (1) Whether an affirmative defense may be placed in issue under the principle of implied consent, (2) whether the holding in an earlier opinion results in respondent's being collaterally estopped to deny that petitioner did not know or have reason to know of an understatement, and (3) whether petitioner is eligible for relief from joint and several liability under section 6015(b).

## FINDINGS OF FACT[2]

Petitioner resided in Windsor, Connecticut, at the time her petition was filed. She completed high school and attended college for 1 year. Petitioner married Gary Pierce on November 26, 1966, and they were married at all times pertinent to this case. During the years at issue, Mr. Pierce was the sole shareholder of Mary Catherine Development Corp. (Mary Catherine). Initially, Mary Catherine purchased unimproved land, developed

---

[2] The parties' stipulation of facts is incorporated by this reference.

and improved it, and then sold the improved realty.  To better track costs, the business of Mary Catherine was divided amongst three separate companies.  In addition to Mary Catherine, Derekseth Corp. (Derekseth) and Deanne Lynn Realty Co. (Deanne Lynn Realty) were incorporated.  Mary Catherine bought unimproved land with the intent of making it suitable for housing construction.  Mary Catherine would then sell the improved land to Derekseth, which in turn would construct houses for sale.  Upon completion, Deanne Lynn Realty would act as Derekseth's agent and market the finished houses.

Petitioner was the corporate secretary of Mary Catherine.  In this role, she signed various business documents, including, but not limited to, corporate resolutions and tax returns.  Corporate documents were prepared by Mary Catherine's attorneys or controller.  Petitioner relied on explanations provided by Mr. Pierce as to the content of documents instead of reading them herself before signing.  One such document was a corporate resolution signed by petitioner on September 15, 1988.  The resolution gave Mr. Pierce the authority to "purchase, sell, assign, mortgage, lease or convey any and all of the real or personal property of every kind and description of said corporation, on such terms as he may deem advisable" and to "execute all deeds, mortgages, releases, leases, or other instruments necessary to carry into effect" said transactions.

In addition to serving as an officer and signing documents for Mary Catherine, petitioner occasionally acted as a secretary, opened mail, answered phones, and picked out carpet or tile for some model homes. Petitioner also occasionally worked as a part-time dental assistant.

During 1989, Mary Catherine owned several unimproved parcels of land including "the Ridge" in East Granby, Connecticut, and "Minnechaug" in Glastonbury, Connecticut. During 1989, the Connecticut real estate market experienced a severe decline resulting in significant reductions in the values of both the Ridge and Minnechaug. Because of severe declines in the value of real estate, the Federal Deposit Insurance Corporation (FDIC) required the banks holding mortgages on the Ridge and Minnechaug to obtain new appraisals. The new appraisals reflected lower values, and the banks were required to reduce the stated values of the properties for regulatory purposes. Similarly, Mary Catherine was expected to reflect the reduction in the values of real estate on its financial statements.

Following the advice of its accountants, Mary Catherine reduced the value of the Ridge as reflected on its December 31, 1989, financial statements and the value of Minnechaug as reflected on its December 31, 1990, financial statements. On its 1989 and 1990 Forms 1120S, U.S. Income Tax Return for an S

Corporation, Mary Catherine claimed corresponding net operating losses (NOLs) attributable to the reductions in value. As a result of the NOLs claimed on Mary Catherine's returns, the Pierces claimed flowthrough losses on their 1989, 1990, and 1991 personal Federal income tax returns. They then carried back those losses to obtain refunds of the taxes they had paid for 1984 and 1986 through 1989.[3]

Respondent determined that the Pierces were not entitled to the claimed losses and resulting refunds. As a result, respondent determined deficiencies of $3,513, $71,974, $539,914, $527,851, and $102,323 in the Pierces' income tax for the years 1984, 1986, 1987, 1988, and 1989, respectively. The Pierces filed a petition with this Court (docket No. 6226-94) on April 18, 1994, alleging error with respect to respondent's determination of income tax deficiencies.

The deficiency proceeding was consolidated with another case, relating to a tax year not in issue in the current controversy. Following the consolidated trial, we held that: (1) Mary Catherine was not entitled to the losses from writedowns of the values of the Ridge and Minnechaug, (2) the Pierces were liable for the income tax deficiencies determined by respondent, and (3) the Pierces were not liable for the accuracy-related

---

[3] For purposes of deciding this case only a general description of these transactions is required. For more detailed explanations, see Pierce v. Commissioner, T.C. Memo. 1997-411.

penalties on account of their good faith reliance on their accountants. See <u>Pierce v. Commissioner</u>, T.C. Memo. 1997-411. On November 14, 1997, the Court entered its decision, and on March 23, 1998, respondent assessed the deficiencies pursuant to this Court's decision.

On January 24, 1995, after the petition had been filed regarding the disallowance of the losses that generated the Pierces' refunds, Mr. Pierce transferred to petitioner the title to property located at 9 Deanne Lynn Circle for $1. The property was encumbered by a mortgage held by Ulster Savings Bank with a balance of $184,605 as of January 10, 1996. On November 12, 1997, after this Court's opinion and 2 days before entry of the decision holding the Pierces liable for large income tax deficiencies, Mr. Pierce transferred business property located at 2643 Day Hill Road in Windsor, Connecticut, to petitioner for no consideration. The Day Hill Road property was encumbered by a mortgage of $197,000, held by the Savings Bank of Manchester.

On October 31, 1991, MCU Financial Corp. (MCU) was incorporated as a C corporation. Petitioner has been the sole shareholder and president of MCU from its inception.

On November 27, 1992, DDC Limited Partnership (DDC) was formed. The general partners were Derek and C. David Weeks, each of whom held a 1-percent interest in the partnership. Petitioner was the only limited partner, with a 98-percent interest in the

partnership.  The capital contributions of the general partners were $5,000 each, and petitioner's capital contribution was $490,000.  Petitioner made her $490,000 capital contribution after the Pierces had received substantial income tax refunds based on the claimed losses.

On January 28, 1993, Seth Co., Inc. (Sethco), was incorporated with Mr. Pierce as its president and petitioner's son, Derek Pierce, as its sole shareholder.  Sethco's place of business was 5 Amanda Drive in Manchester, Connecticut.  Both petitioner's son and Mr. Pierce received annual salaries from Sethco.  In exchange for assuming Derek Seth's trade debt to subcontractors, Sethco received Derek Seth's heavy equipment, some office equipment, and the use of Derek Seth's business name.

On May 13, 1998, petitioner transferred her interest in properties at 9 Deanne Lynn Circle and at 2643 Day Hill Road to DDC.  Petitioner received $1 in consideration for each transfer.  The Day Hill Road property was destroyed by fire on June 1, 1998.  The insurance proceeds were distributed as follows:  (1) The mortgage holder was paid the balance due on the mortgage, (2) $77,710 was paid to DDC, and (3) $97,000 was paid to Sethco for loss of contents.

On May 15, 2000, Sethco conveyed property at 5 Amanda Drive, Manchester, Connecticut, to DDC in exchange for a $300,000 payment, which represented the property's fair market value.

Sethco then remitted the $300,000 to DDC as partial payment on Sethco's loan from DDC.  Sethco continued to use this property as its place of business.

Between 1992 and 2001 several loan transactions occurred among petitioner, MCU, DDC, and Sethco.  From 1992 through 1998, MCU's yearend financial statements reflected "Loans from Stockholder" with balances ranging from $414,200 to $705,200. From 1993 through 1998, MCU's yearend financial statements reflected "Notes Receivable--DDC" with balances ranging from $33,150 to $536,947.  From 1995 through 1998, MCU's yearend financial statements reflected "Notes Receivable--Sethco" with balances ranging from $47,000 to $235,336.

DDC's 1993 through 1998 annual financial statements reflected notes payable to the limited partner in the total amount of $310,000.  DDC's 1997 and 1998 annual financial statements reflected notes receivable from Sethco in the total amounts of $319,617 and $321,843, respectively.  Sethco's 2001 bankruptcy petition reflected an unsecured nonpriority debt to DDC in the amount of $1,385,641.  In addition, the bankruptcy petition reflects that Sethco made a $300,000 payment to DDC on May 4, 2001.

On December 22, 1993, Mary Catherine, Mr. Pierce, and petitioner filed a complaint in the Connecticut Superior Court against their accountants Alec R. Bobrow, David S. Bobrow, Alan

J. Nathan, and Ronald Mamrosh.  The complaint alleged breach of contract and negligence relating to the accountants' preparation of the 1989 and 1990 tax returns of Mary Catherine and the Pierces.  The suit was settled on January 28, 1999, for $900,000. Richard Weinstein, attorney for the plaintiffs, received $135,000 as his fee, and $1,217.87 was paid as costs to the arbitrator/ mediator.  In a signed agreement, Sethco was assigned the potential proceeds of litigation in return for paying litigation costs.  The net proceeds of $763,782.13 were paid to Sethco pursuant to the assignment agreement.

## OPINION

The primary issue we consider is whether petitioner is eligible for relief from joint and several liability.  Section 6015(b)(1) provides for spousal relief from joint and several liability if the following requirements are met:

> (A) a joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;
>
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
>
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects * * * the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

All of the requirements must be met, and failure to meet even one of the requirements is a bar to relief. Sec. 6015(b)(1); Alt v. Commissioner, 119 T.C. 306, 313 (2002). Respondent concedes that petitioner has satisfied the requirements of subparagraphs (A), (B), and (E) of section 6015(b)(1). Therefore, we must decide whether petitioner has met the requirements of subparagraphs (C) and (D), to wit: Whether petitioner, when signing the return, knew or had reason to know that there was a substantial understatement and/or whether, taking into account all of the facts and circumstances, it would be inequitable to hold petitioner liable for the understatement.

Petitioner contends, in the alternative, that respondent, on the basis of the holding of a prior case, is collaterally estopped from denying that she did not know or have a reason to know of the understatements and/or that she is entitled to relief based on the facts presented in this case. We begin our consideration here with the question of collateral estoppel.

I. Is Respondent Collaterally Estopped?

A. In General

Petitioner argues that respondent is collaterally estopped from denying that petitioner did not know or have reason to know

that the claimed deductions would give rise to a substantial understatement. Specifically, petitioner contends that our holding in Pierce I, that the Pierces were not liable for negligence penalties because of their reliance on the advice of their accountants/return preparers, is tantamount to showing that petitioner was uninformed or had no reason to know about tax matters. Petitioner, however, did not plead collateral estoppel as an affirmative defense in her petition. The defense of collateral estoppel was raised, for the first time, in petitioner's opening statement at the beginning of the trial.

Respondent did not object at the time petitioner raised collateral estoppel. However, on brief respondent argued that he is not collaterally estopped because petitioner failed to plead collateral estoppel as an affirmative defense as required by Rule 39. Respondent argues that petitioner's failure to plead collateral estoppel is, in effect, a waiver of that defense. Petitioner contends that the issue of collateral estoppel is in controversy because of respondent's implied consent in accord with Rule 41(b)(1). Alternatively, respondent argues that petitioner failed to meet the procedural or substantive requirements for collateral estoppel.

B. Implied Consent

Rules 34 and 36 provide for the initial pleadings, by which most issues are placed in controversy. Rule 34(b)(4) requires

the pleading of concise assignments for each and every error that a petitioner may allege was committed by the Commissioner. That Rule provides further that "Any issue not raised in the assignments of error shall be deemed to be conceded." Likewise, Rule 36 generally provides that the Commissioner make specific admissions or denials of a petitioner's allegations. In addition to the basic pleading requirements, Rule 39 requires that a party must plead any matter constituting an avoidance or affirmative defense, including collateral estoppel. See also Jefferson v. Commissioner, 50 T.C. 963, 966-967 (1968) (and cases cited threeat).

With respect to all pleadings and amendments thereto, Rule 41(b)(1) provides that an issue may be tried by implied consent if the issue was not raised in the parties' pleadings. In appropriate circumstances, an issue that was not expressly pleaded, but was tried by consent of the parties, may be treated in all respects as if raised in the pleadings. Rule 41(b)(1); LeFever v. Commissioner, 103 T.C. 525, 538-539 (1994), affd. 100 F.3d 778 (10th Cir. 1996).

This Court has held that implied consent can be used to satisfy the pleading requirements of Rules 34 and 36, pertaining to petitions and answers. We have permitted the amendment of a pleading under Rule 41(a) with respect to a matter which we found was tried by consent. Little has been written, however,

concerning the concept of implied consent in the context of Rule 41(b)(1) in connection with the Rule 39 requirement to plead affirmative defenses.

Where there is a failure to plead an affirmative defense, such as collateral estoppel, courts have held that the defense has been waived. See, e.g., <u>Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.</u>, 649 F.2d 530, 534 (7th Cir. 1981); <u>Standish v. Polish Roman Catholic Union of Am.</u>, 484 F.2d 713, 721 (7th Cir. 1973). The waiver of an unpleaded affirmative defense is, in some respects, parallel to the requirement in Rule 34 that any issue not raised in the assignments of error be deemed conceded. See, e.g., <u>Lilley v. Commissioner</u>, T.C. Memo. 1989-602.

The procedural rules require the pleading of affirmative defenses to provide "the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." <u>Blonder-Tongue Labs. v. University of Ill. Found.</u>, 402 U.S. 313, 350 (1971). Otherwise, a party raising an affirmative defense, could "'lie behind a log' and ambush * * * [an opposing party] with an unexpected defense" causing unfair surprise and prejudice. <u>Ingraham v. United States</u>, 808 F.2d 1075, 1079 (5th Cir. 1987).

The Court of Appeals for the Fifth Circuit has addressed whether an affirmative defense (res judicata) was tried with implied consent of the parties. <u>United States v. Shanbaum</u>, 10

F.3d 305, 312 (5th Cir. 1994).  The Court of Appeals held that the issue of res judicata may be tried by implied consent.  In reaching its holding, the Court of Appeals considered factors similar to those that this Court has considered with respect to the use of implied consent in circumstances where pleading requirements for matters other than affirmative defenses were involved.

In arriving at its holding, the Court of Appeals considered "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond."  United States v. Shanbaum, supra at 312-313 (citing Haught v. Maceluch, 681 F.2d 291, 305-306 (5th Cir. 1982)); Jimenez v. The Tuna Vessel "Granada", 652 F.2d 415, 421 (5th Cir. 1981); see also Markwardt v. Commissioner, 64 T.C. 989, 997 (1975) (and cases cited threat).

Similarly, this Court, in deciding whether to apply the principle of implied consent, has considered whether the consent results in unfair surprise or prejudice toward the consenting party and prevents that party from presenting evidence that might have been introduced if the issue had been timely raised.  See Krist v. Commissioner, T.C. Memo. 2001-140; McGee v. Commissioner, T.C. Memo. 2000-308.

In employing the concept of implied consent in the setting of this case, there is no reason to make a distinction between allegations of error and affirmative defenses. Accordingly, the implied consent provisions of Rule 41(b)(1) can be applied to satisfy the Rule 39 requirement to plead or allege avoidances and affirmative defenses.

Next, we consider whether the issue of collateral estoppel was tried with respondent's implied consent. Respondent became aware that petitioner was relying on collateral estoppel when the affirmative defense was raised in petitioner's opening statement at the beginning of the trial. In his responsive opening statement, respondent did not address the question of collateral estoppel. Respondent objected to collateral estoppel, for the first time, in his posttrial brief.

The question of collateral estoppel, as argued by petitioner, is wholly dependent upon this Court's prior opinion concerning the identical parties and taxable year(s) as we consider in the current proceeding. Therefore, there was no need for petitioner or respondent to present additional evidence or question witnesses. Respondent would be estopped only if an issue resolved in our prior opinion met the requirements for collateral estoppel. Accordingly, respondent was not surprised or prejudiced. Respondent had every opportunity to fully address the merits of collateral estoppel on brief and did so. We hold

that the issue of collateral estoppel was tried with respondent's implied consent.  Rule 41(b)(1).

C.  <u>Collateral Estoppel</u>

We now consider whether respondent is collaterally estopped from asserting that petitioner had reason to know of the substantial understatement.  Petitioner contends that our holding in Pierce I, that the Pierces were not negligent and they reasonably relied upon their accountant/return preparer, is tantamount to finding or holding that petitioner had no reason to know of the understatement for purposes of section 6015(b)(1)(C).

The doctrine of collateral estoppel is intended to preclude parties from litigating issues that were necessarily decided in a prior suit.  <u>Johnston v. Commissioner</u>, 119 T.C. 27, 33 (2002).  In <u>Peck v. Commissioner</u>, 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990), this Court, implementing the factors established by the Supreme Court in <u>Montana v. United States</u>, 440 U.S. 147, 155 (1979), established five conditions preliminary to the factual application of collateral estoppel:

(1) The issue in the second suit must be identical in all respects with the one decided in the first suit.

(2) There must be a final judgment rendered by a court of competent jurisdiction.

(3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.

(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.

(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.

Arguably, petitioner has satisfied the more procedural of the five conditions in that a final judgment was rendered in Pierce I, the parties are identical in both cases, and the controlling facts and applicable legal rules have not changed. Further, the negligence issue, which petitioner asserts is the same as that being decided in the current case, was litigated and essential to the Pierce I decision. However, petitioner does not satisfy the one substantive condition that is the core requirement for application of collateral estoppel.

Collateral estoppel promotes judicial economy by preventing successive litigation of identical issues. The issue in the current case is not, in all respects, identical with the issue decided in Pierce I and, therefore, does not satisfy this condition for application of collateral estoppel. The issue litigated in Pierce I was whether petitioner and Mr. Pierce were liable for negligence penalties provided for in section 6662(b)(1). Negligence, as defined in section 6662(c), includes "any failure to make a reasonable attempt to comply with the * * * [Code]". Negligence also includes a "lack of due care or

failure to do what a reasonable and ordinarily prudent person would do in a similar situation". Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992). More particularly, petitioner and her husband claimed that they were not negligent because they relied upon their accountant's advice and tax return preparation skills.

The issue we consider in the current case is whether petitioner did not know or have reason to know that there was an understatement on her joint tax return. This inquiry is distinct from the negligence inquiry in Pierce I and involves a different and more complex standard. In Pierce I we held that petitioner's and her husband's reliance on their accountant was reasonable and that, therefore, the negligence penalty did not apply to her or her husband.[4] Petitioner contends that our holding also implicitly includes a finding that petitioner had no reason to know. In Pierce I, however, we did not find as a fact or hold that petitioner "did not have a reason to know of the understatement." The issues in Pierce I and the current case are not identical and so do not provide a basis for issue preclusion and cannot be used to assert collateral estoppel as an affirmative defense in this case.

_____

[4] Although the Pierces' reliance on their accountant was reasonable, it proved to be unwarranted as evidenced by the Pierces' receipt of $900,000 from their accountant in settlement of the Pierces' contract and negligence claims in connection with the professional advice and preparation of their income tax returns.

Accordingly, we proceed to consider whether petitioner knew or had reason to know of the substantial understatement.

II. Whether Petitioner Knew or Had Reason To Know of the Substantial Understatement

A. In General

In 1998 section 6013(e) was repealed, and section 6015 replaced it.[5]  The requirement of section 6015(b)(1)(C) is similar to the requirement of former section 6013(e)(1)(C) in that both provisions require a spouse who is seeking relief to establish that "in signing the return, he or she did not know, and had no reason to know" of the understatement.  Because of the similarities, analysis in opinions concerning section 6013(e)(1)(C) is instructive for our analysis of section 6015(b)(1)(C).  See Jonson v. Commissioner, 118 T.C. 106 (2002); Butler v. Commissioner, 114 T.C. 276, 283 (2000).

B. The "Reason To Know" Standard To Be Followed in This Case

In deciding "reason to know" cases, the Court of Appeals for the Ninth Circuit has made the distinction that in erroneous deduction cases, unlike omission of income cases, mere knowledge of a transaction underlying a deduction, by itself, is not enough to deny innocent spouse relief.  See Price v. Commissioner, 887

---

[5] Sec. 6015 was added by sec. 3201(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, 734.  Sec. 6015 is effective with respect to any tax liability arising after July 22, 1998, and any tax liability arising on or before July 22, 1998, that is unpaid on that date.

F.2d 959 (9th Cir. 1989). The Court of Appeals in Price adopted the standard that a spouse has "reason to know" of a substantial understatement if "a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement."[6] Id. at 965.

Any appeal of our decision by petitioner would normally lie with the Court of Appeals for the Second Circuit. The Court of Appeals for the Second Circuit has adopted the Court of Appeals for the Ninth Circuit's "reason to know" standard for erroneous deduction cases. See Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), affg. T.C. Memo. 1992-228. Because the underlying tax liability is based on erroneous deductions, we apply the standard set forth in Price v. Commissioner, supra, and adopted in Hayman v. Commissioner, supra at 1261. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

---

[6] In omission of income cases courts consistently apply a standard denying innocent spouse relief to taxpayers who have reason to know of the transaction underlying the understatement of tax. See Jonson v. Commissioner, 118 T.C. 106, 116 (2002). Several Courts of Appeals, however, have adopted the standard of Price v. Commissioner, 887 F.2d 959 (9th Cir. 1989), in erroneous deduction cases. See Reser v. Commissioner, 112 F.3d 1258 (5th Cir. 1997), affg. in part and revg. in part T.C. Memo. 1995-572; Resser v. Commissioner, 74 F.3d 1528 (7th Cir. 1996), revg. T.C. Memo. 1994-241; Kistner v. Commissioner, 18 F.3d 1521 (11th Cir. 1994), revg. and remanding T.C. Memo. 1991-463; Erdahl v. Commissioner, 930 F.2d 585, 589 (8th Cir. 1991), revg. and remanding T.C. Memo. 1990-101. But see Bokum v. Commissioner 94 T.C. 126, 151 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

The following factors have been considered to decide whether a spouse seeking relief had "reason to know":  (1) The spouse's level of education; (2) the involvement of the spouse in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) whether the culpable spouse was evasive and deceitful concerning the couple's finances.  Hayman v. Commissioner, supra at 1261.

Under the holding in Price v. Commissioner, supra, a spouse may not rely upon ignorance of the law as the basis for relief. Concerning that point, the Court of Appeals for the Ninth Circuit explained that

> if a spouse knows virtually all of the facts pertaining
> to the transaction which underlies the substantial
> understatement, her defense in essence is premised
> solely on ignorance of law.  In such a scenario,
> regardless of whether the spouse possesses knowledge of
> the tax consequences of the item at issue, she is
> considered as a matter of law to have reason to know of
> the substantial understatement and thereby is
> effectively precluded from establishing to the
> contrary.  [Citations omitted.]

Price v. Commissioner, supra at 964.

In Hayman v. Commissioner, supra at 1262, the Court of Appeals for the Second Circuit elaborated on this point as follows:  "In order to qualify * * * [for section 6015 relief] the spouse must establish that she is unaware of the

circumstances that gave rise to the error on the tax return, not merely of the tax consequences flowing from those circumstances."

### C. Did Petitioner Have Reason To Know of the Substantial Understatement?

After applying the standard followed by the Court of Appeals for the Second Circuit and considering the relevant factors, we hold that petitioner had reason to know of the substantial understatements. Petitioner was, to some extent, unsophisticated in business, lacked a formal business education, and had a relatively insignificant role in the business and financial affairs of Mary Catherine and the related entities. Petitioner's lack of business acumen, however, was not an impediment to her knowledge and understanding of the facts pertaining to the transaction which underlies the substantial understatement.

The deductions petitioner and Mr. Pierce claimed were based on a reduction in value of real estate holdings. Those reductions were reflected in financial statements for business purposes, but no taxable event (i.e., sale or exchange) had occurred as of the time the deductions were claimed on the Federal tax returns. Petitioner did not need business acumen to understand all of the facts pertaining to the transaction. The loss deductions the Pierces claimed were relatively simple in form and effect and were not the result of some complex series of transactions. The Pierces were aware of the claimed real estate losses, and they may have been under the mistaken impression that

the losses would result in rightful tax refunds.  Petitioner's mere lack of understanding of the legal or tax consequences pertaining to the claimed losses is insufficient, by itself, to afford petitioner relief from the resulting liability.

Petitioner made several expenditures that were relatively "unusual or lavish" when compared to the Pierces' past or normal spending patterns.  After the receipt of the tax refunds, petitioner contributed $490,000 of capital to DDC.  In addition, loans from shareholder balances on MCU's yearend financial statements ranged from $414,200 to $705,200 during the period 1992 to 1998.[7]  DDC's financial statements reflected a $310,000 note payable to the limited partner (petitioner) for its yearend financial statements for 1993 through 1998.

Petitioner contends that the contributions of capital were from her savings.  She also contends that the loan balances shown as due her on the books of MCU and DDC could be attributable to accumulated or accrued interest on existing loans and liability transactions other than loans.  We find curious, however, petitioner's contention that she had enough money in personal savings to fund these transactions.  The only other source of petitioner's income mentioned in the record (outside her involvement with Mary Catherine) was her position as a part-time dental assistant.  More significantly, petitioner did not provide

---

[7] Petitioner was the sole shareholder of MCU.

her personal savings records to document her alleged capability to make capital contributions and/or loans in the relatively large amounts reflected in the business records. Finally, the object of the transfer of assets to petitioner and the creation of new entities, of which she was reflected as sole shareholder or 98-percent limited partner, admittedly was to shield assets from creditors of the Pierces and their business entities.

Lastly, Mr. Pierce openly discussed business matters with petitioner, and he provided her with an explanation of any document he asked petitioner to sign. In addition, Mr. Pierce was not found to be a "culpable" spouse. Both petitioner and Mr. Pierce relied on their accountants to properly assess the validity of the NOL deductions that were ultimately disallowed. In such situations:

> Where the understatement results from "a misapprehension of the income tax laws by the preparers of the tax returns and the signatory parties," both husband and wife are perceived to be "innocent" and there is "no inequity in holding them both to joint and separate liability". * * *

Hayman v. Commissioner, 992 F.2d at 1262 (quoting McCoy v. Commissioner, 57 T.C. 732, 735 (1972)).

Petitioner was fully aware of the facts underlying the transactions. In essence, her defense is premised solely on ignorance of the law. Consequently, under the governing precedent she is considered to know or have reason to know of the substantial understatement.

In that regard, petitioner's knowledge was more than cursory. As the events surrounding the value writedowns unfolded, Mr. Pierce used petitioner as a "sounding board" and explained to her the circumstances that precipitated the writedowns. He also explained the effects of the writedowns on the business. The record reflects that it was Mr. Pierce's usual and normal practice to provide petitioner with explanations of business documents she signed, including the tax returns.

In particular, petitioner was aware that Mary Catherine was in a precarious financial position because of the severe declines in real estate values. At the time of signing the tax returns, she also knew that the net operating loss deductions taken in connection with the decline in real estate values would result in significant refunds.

In addition, the facts surrounding the reasons for the claimed losses were fully divulged and explained on disclosure statements which were made a part of the tax returns. The first page of the Pierces' 1989 and 1990 tax returns listed loss deductions of approximately $2.2 million and $2 million. The disclosure statements were in narrative form and provided complete details of the circumstances surrounding the deductions, including information such as a description of Mary Catherine's business activity, the specifics relating to the decline in real estate values, the revised appraisals of the properties, and the

details underlying the writedowns. A taxpayer who signs a return is deemed to have constructive knowledge of its contents, even if the taxpayer did not read the return. See id. (citing Schmidt v. United States, 5 Cl. Ct. 24, 27 (1984)).

Considering the relevant factors, a reasonably prudent person in petitioner's position at the time she signed the return would be expected to know that the return contained the potential for a substantial understatement. In addition, because petitioner was fully aware of the facts underlying the transaction which gave rise to the substantial understatement, petitioner's defense is based exclusively on her ignorance of the law. Accordingly, we hold that petitioner had knowledge or reason to know of the substantial understatement.

III. Would It Be Inequitable To Hold Petitioner Liable for the Tax Liabilities?

Although our holding that petitioner had reason to know is fatal to her claim for relief, we note that it is not inequitable to deny her relief in this case. Whether it is inequitable to hold a spouse liable for a deficiency is to be determined by taking into account all of the underlying facts and circumstances. Sec. 6015(b)(1)(D). Two material factors most often considered are: "(1) whether there has been a significant benefit to the spouse claiming relief, and (2) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing

on the part of the other spouse." <u>Jonson v. Commissioner</u>, 118 T.C. at 119 (citing <u>Hayman v. Commissioner</u>, <u>supra</u> at 1262). Normal support is not considered a significant benefit. <u>Hayman v. Commissioner</u>, <u>supra</u> at 1262 (citing <u>Flynn v. Commissioner</u> 93 T.C. 355, 367 (1989)).

Petitioner received significant benefits from the refunds. The refunds enabled her to contribute capital and lend funds to the newly created business entities. Further, the Pierces' failure to report the correct tax liability did not result from any concealing, overreaching, or wrongful conduct on the part of Mr. Pierce. Holding the Pierces jointly and severally liable for the tax deficiency is not inequitable.

Lastly, the objectives of the innocent spouse provisions would not be well served if petitioner was afforded relief in the circumstances we consider. When enacting these relief provisions, Congress expressed concern about the possibility that taxpayers could hide behind or otherwise abuse these provisions. The Senate report in connection with the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734, contained the explanation that "The Committee is concerned that taxpayers not be allowed to abuse these rules * * * by transferring assets for the purpose of avoiding the payment of tax by the use of this election." S. Rept. 105-174, at 55-56 (1998), 1998-3 C.B. 537, 591-592.

Because petitioner relied solely on Mr. Pierce's explanations, she may not have completely understood the legal consequences of her signing documents creating DDC and MCU, lending money between these business entities, and transferring property between herself and the business entities.  However, the ultimate object of these transactions was to shield assets from creditors, which ultimately included the Internal Revenue Service.  The granting of relief to petitioner in these circumstances would permit the Pierces to shield themselves from Federal tax liabilities by using section 6015.

Accordingly, we hold that petitioner has not satisfied the requirements under section 6015(b)(1)(C) or (D) and is not entitled to relief from joint and several liability for the tax years at issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.